**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

BYRON CAMPBELL,                                   **CASE NO.:** 22-cv-3594

       Plaintiff,

       v.

JP AUTO SHOP LLC d/b/a BP and
MUKTI N 39 LLC,

       Defendants.

_____

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, BYRON CAMPBELL by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations and governing legal authorities, hereby files this Complaint and sues JP AUTO SHOP LLC d/b/a BP, a New York limited liability company, and MUKTI N 39 LLC, a New York limited liability company (collectively hereinafter, the "Defendants") for injunctive relief, attorney's fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 _et seq._ (hereinafter "AMERICANS WITH DISABILITIES ACT" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") and alleges:

## JURISDICTION AND VENUE

1.  This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, _et seq._ This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court

has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject federal claims.

2. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 (B) in that the transaction or occurrence giving rise to this lawsuit occurred in New York.

3. The remedies provided by the NYSHRL against discrimination are not exclusive and state administrative remedies do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

4. At all times material hereto, Plaintiff, BYRON CAMPBELL, was and is over the age of 18 years, *sui juris*, and was a resident of Nassau County, which is located within the Eastern District of New York.

5. Mr. Campbell has at all material times suffered from a "qualified disability" under Title III of the ADA; Plaintiff suffers from diabetic neuropathy and uses a motorized electric scooter for daily mobility.  Plaintiff also has a physical disability within the meaning of the laws of the State of New York.

6. The Defendants, JP AUTO SHOP LLC d/b/a BP, a New York limited liability company ("BP"), and MUKTI N 39 LLC, a New York limited liability company ("Mukti"), are authorized to conduct, and are conducting business within the State of New York.

7. Upon information and belief, BP is the lessee and/or operator of the real property, and the owner of the improvements where the gas station is located, which is the subject of this lawsuit, the facility commonly referred to as BP (hereinafter the "Subject Facility") located at 39 Jericho Turnpike, Jericho, New York 11753 (hereinafter and heretofore referred to as "Subject Property"), which also maintains and controls the Subject Facility.

8. Upon information and belief, Mukti is the owner, lessor and/or operator of the real property, where the Subject Facility is located which is the subject of this lawsuit, the facility commonly referred to as BP, located at the Subject Property, and also maintains and controls the Subject Facility. The Subject Facility is a place of "public accommodation" as that term is defined under the ADA; specifically, the Subject Facility is operated as a gas station and retail store.

9. Upon information and belief, the Defendants are the co-operators of the Subject Property.

10. Plaintiff resides approximately one mile from the Subject Property and has an intention to return to the Subject Property for the purchase of items from the retail store and use of the public restroom.

11. Prior to filing this lawsuit Plaintiff visited the Subject Property, as a customer, on multiple occasions with the intention of purchasing items from the retail store and using the restroom. Specifically, Plaintiff would attempt to enter the retail store with the intention of purchasing lottery tickets, snacks, cigarettes and gas.  In addition, Plaintiff has used the restroom for personal use at the Subject Property.

12. Upon visiting the Subject Property, Plaintiff discovered the Subject Property was not accessible, to wit:  Plaintiff, due to the Defendant's failure to provide reasonable accommodations for his disabilities, was unable to access the retail store or make use of the restroom of the Subject Facility with his motorized electric wheelchair.

13. As a result, when Plaintiff wished to enter the retail store and/or the restroom of the Subject Facility, he would be forced to leave his motorized electric scooter in the front area next to the gasoline refueling pumps and use a cane in hopes of accessing the retail store and/or restroom of the Subject Facility.

14. Consequently, Plaintiff has been forced to stop visiting the Subject Property on the basis of his disability in that the actions required for Plaintiff to enter the retail store and/or restroom has caused Plaintiff humiliation, embarrassment and anguish.

15. As a result, Plaintiff has been unable to access the Subject Property to purchase goods or services and/or use the restroom in the same manner as patrons without disabilities.

16. That all events giving rise to the instant action occurred in the County of Nassau, State of New York.

17. Venue is proper in the Eastern District of New York in that the Subject Property and Subject Facility are located in and doing business in the County of Nassau, State of New York.

**COUNT I**
**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

18. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

19. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

20. Congress specifically found, *inter alia*, that:[1]

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

---

[1] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

4

c. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities

d. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

21. Congress explicitly set forth the purpose of the ADA; to wit:[2]

(i) Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

(iii) Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

[2] 42 U.S.C. § 12101(b) (1)(2) and (4).

22. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

23. In addition to the foregoing, the ADA specifically provides that discrimination includes,

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

> 42 U.S.C. § 12182(b)(2).

24. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[3]

25. Pursuant to 42 U.S.C. §1281(7) and 28 C.F.R. §36.104, the Subject Facility, which is subject to this action is a public accommodation because it provides goods and services to the public.

26. Upon information and belief, the Subject Facility has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1992, and/or has sufficient income to make readily achievable accessibility modifications.

27. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[4]

28. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[5]

---

[3] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[4] 28 C.F.R. Part 36.

29. The Subject Property and Subject Facility is legally required to be, ***but is not***, in compliance with the ADA, ADAAG and NYSHRL.

30. Here, Defendants have failed to comply with all requirements under the U.S. Department of Justice regulations for retail stores.  Specifically, Defendants do not provide an accessible entrance to the establishment or any form of assistance to disabled individuals. Therefore, individuals with disabilities, such as Plaintiff, are unable to obtain items from the retail store and/or use the restroom, unlike patrons without disabilities.  Likewise, Defendants failed to take the reasonable steps necessary to ensure that Plaintiff (and others similarly situated) are not excluded on the basis of one's disability, even though doing so would not be an undue burden, nor fundamentally change the nature of the goods and services that are provided.

31. In addition to the foregoing, upon information and belief, the Subject Property and Subject Facility are also in violation under the ADA in that the Defendants are discriminating against the Plaintiff as a result of the following violations:

   a.   Inaccessible Subject Facility entrance:

      i.   There are changes in level at the entrance to the Subject Facility exceeding ½ (one-half) inch that are not ramped in violation of section 303.4 of the 2010 ADAAG standards.

      ii.   Due to the external barriers present at the accessible entrance, the Subject Property lacks at least one accessible route provided within the site to the public streets and sidewalks in violation of section 206.2.1 of the 2010 ADAAG standards.

      iii.   The Subject Property lacks signage identified by the International Symbol of Accessibility that indicates the location of the nearest entrance

---

[5] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

complying with section 404 of the 2010 ADAAG standards, if such an entrance exists.  This policy decision by Defendants violates section 216.6 of the 2010 ADAAG Standards.

   iv. The Subject Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of section 206.2.1 of the 2010 ADAAG standards.

   v. There is not at least one accessible entrance that complies with section 404 of the 2010 ADAAG standards which is a violation of section 206.4.5 of the 2010 ADAAG Standards.

b.  Non-compliant restroom:

   i. Compliant signage identifying the restroom is not provided.

   ii. The restroom faucet at the lavatory is non-compliant in that it requires twisting of the wrist.

   iii. The lavatory is non-compliant in that it fails to provide insulated pipes and water lines.

   iv. The water closet is non-compliant in that it fails to provide the required grab bars on the rear and side walls.

   v. The paper towel dispenser is non-compliant in that the mounted height of the paper towel dispenser exceeds the maximum height allowance.

   vi. The mirror is inaccessible in that the mounted height of the mirror exceeds the maximum height allowance.

c.  Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

    d.  Additional violations will be set forth within Plaintiff's expert disclosures and report, following inspection made pursuant to Fed. R. Civ. P. 34. Upon information and belief, such additional violations may include inaccessible counters, seating, or other such issues as may be identified during litigation. As such, this is not intended as a complete list of ADA violations at the Subject Property.

32. Plaintiff resides in the proximity of the Subject Property, in that his home is only one mile from the gas station and retail store.  Plaintiff intends to visit the Subject Property again in the future, perhaps repeatedly, in order to purchase items from the retail store and use the public restroom; however, in light of his disabilities, unless and until the Subject Property is brought into full compliance with the ADA, and the U.S. Department of Justice regulations, Plaintiff will remain unable to do so.

33. As a result of the foregoing, Defendants have discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property. Defendants' discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq*.

34. Defendants will continue to discriminate against Plaintiff and others with disabilities unless and until they are compelled by this Court to remediate the ADA violations set forth herein, and to make the Subject Property accessible to and usable by persons with disabilities, including Plaintiff, by making appropriate alterations to the Subject Property and Subject Facility including but not limited to providing an entrance ramp to access the retail store and making alterations to remediate the non-compliant amenities in the restroom, so that customers with disabilities can enjoy full and equal access to the retail store and restroom.

35. This Court is vested with authority to grant injunctive relief sought by Plaintiff, including entry of an Order requiring alteration and modification of the Subject Property, and/or alteration and modifications to Defendants' policies and procedures, so as to make the Subject Property readily accessible to and useable by individuals with disabilities as required by law.

36. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorney's fees, costs, and litigation expenses, all of which are recoverable against the Defendants.[6]

37. Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the ADA unless and until that failure is enjoined.

## COUNT II
## VIOLATIONS OF THE NYSHRL

38. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

39. The New York State Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation...because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … [7]

40. The Subject Property and Subject Facility is a place of public accommodation as defined by the NYSHRL.

---

[6] 42 U.S.C. §§ 12205, 12117
[7] NYS Exec. Law § 296 (2) (a).

10

41. Plaintiff visited the Subject Property and Subject Facility and encountered architectural barriers as described herein.

42. By failing to provide an accessible route into the retail store and restroom, and allowing for architectural barriers that discriminate against people with disabilities through the actions described above, Defendants have, directly or indirectly, refused, withheld, and/or denied to Plaintiff, because of his disability, the accommodations, advantages, facilities or privileges thereof provided at the Subject Property and Subject Facility. Failure on the part of Defendants to act to identify and remove barriers can be construed as an act of "negligence per se."

43. Plaintiff has been damaged and will continue to be damaged by this discrimination as more fully set forth above and, in addition to injunctive relief, seeks judgment pursuant to N.Y. Exec. Law §297, including for damages pursuant to § 297(9) thereof.

## ATTORNEYS' FEES AND COSTS

44. Plaintiff has been obligated to retain the undersigned attorneys for purposes of filing and prosecuting this lawsuit. Pursuant to the ADA and NYSHRL, Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendants.

45. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

## DAMAGES

46. Plaintiff demands One Thousand Dollars ($1,000.00) in compensatory damages based on Defendants' violation of the NYSHRL.

## INJUNCTIVE RELIEF

47. Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the ADA and NYSHRL.

48. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order to alter the Subject Property and Subject Facility so that they are made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA and NYSHRL, and closing the facilities until the requisite modifications are complete.

49. Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation, their policies, business practices, operations and procedures.

50. Injunctive relief is also necessary to make the Subject Premises readily accessible and useable by Plaintiff in accordance with the ADA and NYSHRL.

WHEREFORE, Plaintiff hereby demands judgment against the Defendants, jointly and severally, and requests the following injunctive and declaratory relief:

a) A declaration that the Subject Property and Subject Facility owned, leased, operated, controlled and/or administrative by Defendants are in violation of the ADA and NYSHRL;

b) An Order requiring Defendants to evaluate and neutralize their policies, practices and procedures towards individuals with disabilities, for such reasonable time to allow the Defendants to undertake and complete corrective procedures to the Subject Property and the Subject Facility;

c) An Order requiring Defendants undertake and complete a program of corrective remodeling, reconstruction, and other such actions as may be necessary, to remediate and eliminate all ADA and ADAAG violations found at trial to be present upon the Subject Property and the Subject Facility;

d) An Order requiring Defendants to alter their facilities and amenities to make them accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the ADAAG, and NYSHRL;

e) Requiring that the Subject Facility be closed to the general public until such time as it complies with all ADA, ADAAG and NYSHRL requirements, including but not limited to complete remediation of physical barriers to access on the Subject Property and the Subject Facility;

f) An Order issuing a permanent injunction ordering Defendants to close the Subject Premises and cease all business until Defendants remove all violations under the ADA and the NYSHRL, including but not limited to the violations set forth herein;

g) An award of reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff;

h) An award of damages in favor of Plaintiff in the maximum amount permitted by the NYSHRL, as well as, compensatory and punitive damages; and

i)  For such other and further relief that this Court deems just, necessary and proper.

Dated:  June 13, 2022                              Respectfully Submitted,

**Bashian & Papantoniou P.C.**
Attorneys for Plaintiff
500 Old Country Road, Ste. 302
Garden City, NY 11530
Tel:     (516) 279-1554
Fax:     (516) 213-0339

***By: /s/ Erik M. Bashian, Esq.***
**ERIK M. BASHIAN, ESQ. (EB7326)**
eb@bashpaplaw.com

14

## VERIFICATION

BYRON CAMPBELL, hereby verifies and says that I am the Plaintiff in the above-captioned case. I have reviewed the allegation and they are true and correct to the best of my knowledge, information, and belief.

Dated: June 13, 2022

Byron Campbell
Byron Campbell